UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-403 CAS (AGRx) | Date | January 29, 2013 |
|---|---|---|---|
| Title | K.K., ET AL. V. ALTA LOMA SCHOOL DISTRICT, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| Not Present | Not Present |

**Proceedings:** **(In Chambers:)** ORDER RE: COURT TRIAL HELD DECEMBER 7, 2012

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket #20, filed October 15, 2012)

## I. INTRODUCTION

Plaintiff K.K., by through her parents Chris Kamena and Barbara Kamena, brought the instant action seeking to reverse a decision of the California Office of Administrative Hearings ("OAH").[1] The decision found that defendant Alta Loma School District ("ALSD") had provided plaintiff a free and appropriate public education ("FAPE") pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1415 et seq. ("IDEA"). Plaintiff also seeks other relief under the IDEA, including reimbursement for educational services, attorney's fees, and other declaratory relief.

On October 15, 2012, defendants moved for summary judgment. Plaintiff filed an opposition on November 5, 2012, and defendants replied on November 13, 2012. Additionally, plaintiff filed a trial brief on October 15, 2012, defendants filed an opposition to plaintiff's trial brief on November 5, 2012, and plaintiff replied on November 13, 2012. On December 7, 2012, the Court held a hearing on defendants' motion for summary judgment, and also conducted a trial regarding plaintiff's request to reverse the decision of the OAH. After considering the parties' arguments, the Court finds and concludes as follows.

---

[1] The decision below appears in the Administrative Record ("AR") at 347 – 400.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-403 CAS (AGRx) | Date | January 29, 2013 |
|---|---|---|---|
| Title | K.K., ET AL. V. ALTA LOMA SCHOOL DISTRICT, ET AL. | | |

## II.    LEGAL STANDARD

The IDEA provides federal funds to assist state and local agencies in educating children with disabilities.  20 U.S.C. § 1412; Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1469 (9th Cir. 1993).  The purpose of the IDEA is to provide all children with disabilities "a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living; to ensure that the rights of children with disabilities and parents of such children are protected; and to assist States, localities, educational service agencies, and Federal agencies to provide for the education of all children with disabilities . . . ."  20 U.S.C. § 1400(d).  This purpose is implemented through development of individualized education plans ("IEP"), which are crafted by a team including a student's parents, teachers, and the local educational agency.  20 U.S.C. § 1414(d).  The document prepared by the team contains the student's current level of performance, annual goals, short and long term objectives, specific services to be provided and the extent to which the student may participate in regular educational programs, and criteria for measuring the student's progress.  Id.  The IDEA requires that educators also guarantee certain procedural safeguards to children and their parents, including notification of any changes in identification, education and placement of the student, as well as permitting parents to bring complaints about matters relating to the student's education and placement, which may result in a mediation or a due process hearing conducted by a local or state educational agency hearing officer.  20 U.S.C. § 1415(b)-(i).

Under 20 U.S.C. § 1415(i) , "[a]ny party aggrieved by the findings and decision" made pursuant to a state's administrative hearings process for resolving complaints made under the IDEA may "bring a civil action . . . in a district court of the United States."  20 U.S.C. § 1415(i)(2)(A).  In any action brought under § 1415, "the court shall receive the record of the [state] administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C).  As the Supreme Court explained in Board of Education v. Rowley, 458 U.S. 176 (1982), "a court's inquiry in suits brought under [§ 1415] is twofold.  First, has the State complied with the procedures set forth in the Act?  And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits."  Id. at 207.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-403 CAS (AGRx) | Date | January 29, 2013 |
|---|---|---|---|
| Title | K.K., ET AL. V. ALTA LOMA SCHOOL DISTRICT, ET AL. | | |

Courts review state administrative decisions regarding the appropriateness of a special education placement de novo. County of San Diego v. California Special Educ. Hearing Office, 93 F.3d 1458, 1466 (9th Cir. 1996); see also Ojai Unified School Dist. v. Jackson, 4 F.3d 1467, 1471 (9th Cir. 1993) ("judicial review in IDEA cases differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review."). When applying de novo review, however, a district court must give "due weight" to judgments of educational policy, and "should not substitute their own notions of sound educational policy for those of the school authorities which they review." Gregory K. v. Longview School Dist., 811 F.2d 1307, 1311 (9th Cir. 1987). Deference to an administrative officer is appropriate in matters arising under the IDEA "for the same reasons that it makes sense in the review of any other agency action – agency expertise, the decision of the political branches to vest the decision initially in an agency, and the costs imposed on all parties of having still another person redecide the matter from scratch." Capistrano Unified School Dist. v. Wartenberg, 59 F.3d 884, 891 (9th Cir. 1995) (quoting Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988)).

The amount of deference appropriate in a particular case is within the reviewing court's discretion. Gregory K, 811 F.2d at 1311. When determining the degree of deference to grant a hearing officer's findings, a particularly important factor is the thoroughness with which they have been reached. Capistrano 59 F.3d at 891.

### III. BACKGROUND AND FACTUAL FINDINGS

The decision below contains detailed and thorough factual findings. See AR 351 – 378. The Court finds that the factual findings in the decision below are accurate, and adopts them as they are set out. Additionally, since the factual findings encompass matters no longer pursued in this appeal, and to provide context for the Court's decision, the Court summarizes the relevant facts.

Plaintiff has attended Jasper Elementary School within ALSD since she began kindergarten. Nothing took place during plaintiff's kindergarten year indicating that plaintiff would need special education services. During her first grade year, although plaintiff showed strengths in some areas of academics, she began having trouble in the areas of reading and language arts, and did not meet state educational standards by the end of first grade. Plaintiff's first grade teacher – who has taught for over thirty years

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-403 CAS (AGRx) | Date | January 29, 2013 |
|---|---|---|---|
| Title | K.K., ET AL. V. ALTA LOMA SCHOOL DISTRICT, ET AL. | | |

and received training in identifying students who need special education – took note of these shortcomings, but concluded that they did not justify referring plaintiff to special education.

In second grade, plaintiff continued to struggle academically, and had particular difficulty in reading. Consequently, plaintiff's parents had informal discussions with plaintiff's teacher and members of ALSD's special education staff, and on November 17, 2009, plaintiff's mother and ALSD agreed to have plaintiff assessed to determine whether she qualified for special education services. These assessments were conducted by two ALSD staff members, Regina Edmon ("Edmon"), a school psychologist, and Kimberlynn Rybarczyk ("Rybarczyk"), a credentialed special education teacher. Edmon and Rybarczyk administered tests to evaluate plaintiff's cognitive and academic abilities, and plaintiff scored below average in almost all areas of evaluation. Plaintiff's score in listening comprehension was, however, substantially higher than her other scores.

On January 28, 2010, ALSD convened an IEP meeting to review the assessments and determine whether plaintiff needed special education services. The participants in the meeting concluded that plaintiff qualified for special education services under the category of speech and language impairment. The IEP proposed that plaintiff should remain in the general education classroom, but receive twenty minutes of instruction in the special education resource room ("resource room") for eighty minutes a week (twenty minutes per day four days a week), and also receive forty half-hour sessions of speech and language services over the course of the year. Plaintiff's parents agreed to the IEP, but also requested that ALSD fund an independent educational evaluation ("IEE") in the area of psychoeducation. Plaintiff's parents also indicated that they only agreed to the IEP pending the results of the IEE. ALSD implemented this IEP for the remainder of the school year. Plaintiff made some progress in her IEP goals, but she did not meet second grade educational standards by the end of the year.

The psychoeducation IEE requested by plaintiff's parents took place between April 2010 and June 2010, and was conducted by Dr. Stephen Meyer ("Meyer"), a clinical psychologist. Meyer administered tests to evaluate plaintiff's level of cognitive ability, and also administered neurological tests to determine if plaintiff suffered from a brain

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-403 CAS (AGRx) | Date | January 29, 2013 |
|---|---|---|---|
| Title | K.K., ET AL. V. ALTA LOMA SCHOOL DISTRICT, ET AL. | | |

injury.[2]  Meyer used a different testing methodology than Edmon and Rybarcazyk, and concluded that plaintiff's cognitive ability was in the average range, but that she had a processing disorder in the areas of visual spatial processing and auditory conceptualization.  Meyer also concluded that plaintiff suffered from mild to moderate brain dysfunction caused by birth trauma, and opined that the test results indicated dyslexia and spelling dyspraxia.  Finally, Meyer diagnosed plaintiff with Attention Deficit Hyperactivity Disorder based on behavioral tests and questionnaires he administered to plaintiff and her mother.

Based on the test results, Meyer recommended that ALSD revisit plaintiff's special education eligibility, and opined that the best special education methodology for resolving plaintiff's language arts problems was the Lindamood-Bell program.[3]  Meyer believed that the Lindamood-Bell program's "multisensory approach" was better for brain-injured children than traditional reading programs offered in school.  Meyer admitted, however, that he was not familiar with the special education methodology that ALSD used with plaintiff.

After receiving Meyer's recommendation, plaintiff's parents took her to a Lindamood-Bell office in Pasadena, CA for another evaluation.  A staff member at the Lindamood-Bell office administered a battery of tests to plaintiff, and based on the results concluded that plaintiff should receive four hours of Lindamood-Bell instruction five days a week for a period of seven to nine weeks.  Anne Perry ("Perry"), the director of the Lindamood-Bell office in Pasadena, signed the assessment but did not know which staff member actually conducted the assessment.

---

[2] Meyer suspected that plaintiff may have been suffering from a brain injury because plaintiff's mother informed him that plaintiff was not breathing when she was born.

[3] Lindamood-Bell is a special education methodology, and there are several Lindamood-Bell Learning Centers in the United States that offer specialized one-to-one intensive instruction.  Both plaintiff and ALSD presented expert testimony regarding Lindamood-Bell.  AR 1868 – 1980 (testimony of Douglass Moss); AR 2482 – 2571 (testimony of Anne Perry); see also www.lindamoodbell.com/about.spx.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-403 CAS (AGRx) | Date | January 29, 2013 |
|---|---|---|---|
| Title | K.K., ET AL. V. ALTA LOMA SCHOOL DISTRICT, ET AL. | | |

  On August 26, 2010, ALSD convened an IEP meeting to review the IEE and the Lindamood-Bell assessment. Perry and Meyer attended the IEP meeting and discussed their assessments and recommendations. Meyer recommended Lindamood-Bell services at the meeting, and Perry expressed her belief that Lindamood-Bell services would bring plaintiff up to grade level in seven to eight weeks. The ALSD staff members responded that they were concerned about enrolling plaintiff in the Lindamood-Bell program for four hours each day because that would entail plaintiff missing the core curriculum at school. ALSD staff members also believed that plaintiff could make sufficient progress in the general education classroom with some special education support. Nevertheless, ALSD staff members wanted another chance to review the assessments presented at the meeting, and therefore made no changes but scheduled a follow up meeting for September 16, 2010.

  At the September 16, 2010 follow-up meeting, ALSD staff members and plaintiff's parents discussed her present levels of performance and her progress towards IEP goals. ALSD staff members noted that plaintiff was making progress on her IEP goals, but had not met them. Consequently, the goals in plaintiff's IEP were modified to take into account her progress and the appropriate educational standards for third grade. Additionally, plaintiff's IEP was updated to increase the amount of time plaintiff spent in the resource room to thirty minutes a day for four days a week, and also was also modified to include a clause stating that plaintiff could spend "any other amount of time, as needed" in the resource room. Plaintiff's parents did not consent to the IEP at the meeting, but consented on December 9, 2010.

  Although plaintiff's parents consented to the proposed IEP, they also requested that ALSD fund services through Lindamood-Bell. ALSD responded that they would not fund Lindamood-Bell services because plaintiff was making progress at Jasper Elementary, and the Lindamood-Bell program provided instruction in a restrictive setting, so placing plaintiff in that program would require plaintiff to miss valuable social and academic experiences that occur in a general education classroom.

  On January 21, 2011, plaintiff's parents decided that they were going to remove her from Jasper Elementary and enroll her in the Lindamood-Bell program every morning from 8 AM until 11 AM, but that they would return plaintiff to Jasper Elementary in the afternoon. Plaintiff's parents also demanded that plaintiff not receive instruction in the resource room in the afternoons, and on February 4, 2011 withdrew their consent to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-403 CAS (AGRx) | Date | January 29, 2013 |
|---|---|---|---|
| Title | K.K., ET AL. V. ALTA LOMA SCHOOL DISTRICT, ET AL. | | |

plaintiff's IEP. Plaintiff's mother explains that she decided to remove plaintiff from Jasper Elementary and enroll her in Lindamood-Bell because she believed plaintiff would never catch up if she remained in the general education classroom. Plaintiff began attending Lindamood-Bell on February 1, 2011. She also continued to receive instruction in the resource room while at Jasper Elementary, and received between ten and ninety minutes of instruction per day.

The parties met for another IEP meeting on February 10, 2011 to discuss plaintiff's parents' decision to remove her from Jasper Elementary. ALSD staff members present at the meeting believed this was a mistake because plaintiff had made progress since the beginning of the school year. The ALSD staff members were also concerned about plaintiff missing the social component of education. Plaintiff's parents responded that they remained concerned about plaintiff's low test scores. Also at the meeting, ALSD proposed increasing the amount of plaintiff's instructional time in the resource room to ninety minutes per day, with half that time devoted to mathematics and the other half to language arts. Plaintiff's parents did not consent to the proposed IEP at the meeting, and two weeks later they sent ALSD a letter stating that they consented to instruction in the resource room for mathematics only. Beginning March 1, 2011, ALSD only provided mathematics instruction to plaintiff in the resource room.

After the February 2011 IEP meeting, plaintiff continued attending Lindamood-Bell in the morning. On May 4, 2011, after plaintiff had received 189 hours of instruction, the Lindamood-Bell center conducted a reevaluation of plaintiff on May 4, 2011. Although Anne Perry, the director of the Pasadena Lindamood-Bell office, concluded that this evaluation showed improvement, she recommended another 120 – 160 hours of Lindamood-Bell instruction.

After unsuccessful attempts at mediation, plaintiff and ALSD both requested administrative due process hearings to address, among other things, the procedural and substantive adequacy of plaintiff's IEPs, and plaintiff's request for reimbursement for Lindamood-Bell services. On August 23, 24, 25, 30, and 31, 2011, Administrative Law Judge Susan Ruff conducted a hearing, and issued the decision below on October 2011. The instant action followed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-403 CAS (AGRx) | Date | January 29, 2013 |
|---|---|---|---|
| Title | K.K., ET AL. V. ALTA LOMA SCHOOL DISTRICT, ET AL. | | |

### IV. ANALYSIS

Plaintiff raises four errors in the decision below. The Court considers each in turn.

#### A. Whether ALSD Offered Plaintiff Substantively Appropriate IEPs

Plaintiff's central contention is that the IEPs offered by ALSD in September 2010 and February 2011 were not substantively adequate, and that ALSD was required to provide plaintiff with intensive, one-on-one services of the kind provided at Lindamood-Bell. The decision below found both IEPs to be substantively adequate under the Rowley standard.

Plaintiff asserts two arguments challenging the decision below. First, plaintiff contends that the decision below applied an incorrect legal standard. The decision considered whether plaintiff's IEPs offered plaintiff "some educational benefit," but plaintiff argues that under Ninth Circuit precedent, the correct legal standard is whether an IEP offers a student a "meaningful educational benefit." N.B. v. Hellgate Elementary School Dist., 541 F.3d 1202, 1213 (9th Cir. 2008); Office of Administrative Hearings Decision ("OAHD"), Legal Conclusions ¶ 5 (applying the "some educational benefit" standard). Plaintiff claims that this error warrants reversing the decision below because the IEPs at most were calculated to offer her de minimis benefits, not meaningful benefits. In support of this argument, plaintiff points out that Dr. Meyer testified that typical special education services offered for forty-five minutes per day were not sufficient to satisfy plaintiff's needs.

Plaintiff's second ground for reversing the decision below is that it ignored evidence that she purportedly failed to make meaningful progress under the IEPs. Plaintiff argues that she did not make significant progress in second and third grade under her IEPs. Additionally, plaintiff contends that as of December 2011, her reading scores have actually declined when compared with her scores in 2009. See Supplemental Evidence ("SE"), Dkt. # 18, at 2575 (KTEA test score of 68 in December 2011, which is in the "lower extreme" range), AR at 426 (KTEA test score of 73 as of 2009, which is in the "below average" range).

The Court reviews the substantive adequacy of plaintiff's IEPs de novo. Gregory K. v. Longview School Dist., 811 F.2d 1307, 1314 (9th Cir. 1987). First, as to the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-403 CAS (AGRx) | Date | January 29, 2013 |
|---|---|---|---|
| Title | K.K., ET AL. V. ALTA LOMA SCHOOL DISTRICT, ET AL. | | |

appropriate legal standard, plaintiff is correct that the decision below applied an incorrect standard for determining the substantive adequacy of plaintiff's IEPs. In Hellgate, the Ninth Circuit recognized that after the 1997 amendments to the IDEA, a special education plan must provide a student with a "meaningful benefit," not merely "some educational benefit." Hellgate, 531 F.3d at 1213. The "meaningful benefit" standard is a more exacting form of review than the "some benefit" standard, and this "heightened" review requires a court to determine the adequacy of the educational benefit "in relation to the potential of the child at issue." Id. (citing Deal v. Hamilton County Bd. of Educ, 392 F.3d 840, 862 (6th Cir. 2004). When applying the meaningful benefit test, courts should examine whether a program is "individualized and tailored to the unique needs of the child and reasonably calculated to produce benefits (i.e., learning progress, growth) that are significantly more than de minimus and gauged in relation to the potential of the child at issue." Blake C. v. Dept. of Educ., State of Hawaii, 593 F. Supp. 2d 1199, 1206 (D. Hawaii 2009).

Nevertheless, it remains true that under the heightened "meaningful benefit" standard, a school need not provide a special education program that maximizes the potential of a child. R.B. ex rel. F.B. v. Napa Valley Unified School Dist., 496 F.3d 932, 946 (9th Cir. 2007) ("the IDEA does not guarantee the absolutely best or 'potential-maximizing' education for the individual child."); see also Hellgate, 541 F.3d at 1202, 1213 n. 2. Therefore, as another court in this circuit has concluded, "Rowley still applies; its meaning, however, has been refined by subsequent statutory changes and corresponding case law." Blake C., 593 F. Supp. 2d at 1207.[4]

The decision below should have articulated the "meaningful benefit" standard. It does not appear, however, that this error led to an incorrect result. Crucially, the decision found that plaintiff's IEP was individualized to her particular needs. The decision reached this conclusion based on Rybarczyk's testimony, which stated that plaintiff's IEPs identified and addressed plaintiff's needs and provided a placement and services sufficient to meet those needs. OAHD, Factual Findings ¶¶ 35, 90; OAHD, Legal Conclusions ¶¶ 78 – 79. Additionally, the decision noted that plaintiff received special

---

[4] The court in Blake C. also noted that "[v]arious opinions have left it ambiguous as to what the precise difference, if any, is between 'meaningful' benefit and 'some' benefit." Blake C., 593 F. Supp. 2d at 1206.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-403 CAS (AGRx) | Date | January 29, 2013 |
|---|---|---|---|
| Title | K.K., ET AL. V. ALTA LOMA SCHOOL DISTRICT, ET AL. | | |

education pursuant to the Voyager Passport intervention program, and that ALSD provided testimony that this intervention program is particularly effective for struggling readers such as plaintiff. OAHD, Factual Findings ¶¶ 67 – 68. Furthermore, the IEPs were developed pursuant to IEP meetings where the participants considered detailed individualized evaluations of plaintiff's skills and limitations, and this suggests that the goals and services in the IEP were appropriately tailored for the special education issues identified in the evaluations.

Additionally, the decision below observed that none of plaintiff's witnesses credibly testified that ALSD's program was not appropriate for plaintiff's needs. While Meyer generally stated that ALSD's program was not a good match for plaintiff, he admitted that he was not familiar with the special education programs ALSD offered. OAHD, Factual Findings ¶ 90, OAHD, Legal Conclusions ¶¶ 78 – 79. Similarly, while Perry testified that Lindamood-Bell services would be the best fit for plaintiff, she did not testify that ALSD's services would fail to provide an educational benefit to plaintiff. OAHD, Factual Findings ¶ 90. Consequently, the decision below reasonably found that neither Meyer's opinion nor Perry's cast doubt on whether plaintiff's IEP was properly individualized for plaintiff's particular needs. It therefore appears that application of the incorrect legal standard in the decision below did not lead to reversible error.

The Court next considers plaintiff's argument that she only made de minimis progress, not meaningful progress, under her IEPs. Before considering whether plaintiff has made meaningful progress, however, the Court must address a dispute between the parties regarding what evidence is relevant to this inquiry. As noted above, plaintiff argues that evidence concerning plaintiff's progress in the beginning of fourth grade is relevant to whether her September 2010 and February 2011 IEPs, developed during third grade, were reasonably calculated to confer a meaningful benefit on plaintiff. According to plaintiff, plaintiff's lack of progress in fourth grade provides some evidence that the IEPs were unreasonable because it shows that they did not, in fact, succeed in conferring a meaningful educational benefit on plaintiff. Defendants disagree, and argue that under the "hindsight rule," see Adams v. State of Oregon, 195 F.3d 1141, 1149 (9th Cir. 1999), the Court can only evaluate the substantive reasonableness of an IEP based on evidence that a school could reasonably have considered at the time the IEP was developed. Since ALSD could not have considered plaintiff's progress in fourth grade when developing her

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-403 CAS (AGRx) | Date | January 29, 2013 |
|---|---|---|---|
| Title | K.K., ET AL. V. ALTA LOMA SCHOOL DISTRICT, ET AL. | | |

third grade IEPs, defendants contend that this evidence is not relevant to whether the IEPs were substantively reasonable.

The Court finds that defendants have overstated the "hindsight rule." An IEP should not be judged "exclusively in hindsight," but the reasonableness of an IEP need not be determined solely based on facts available to the school at the time the IEP was formulated. Adams, 195 F.3d at 1149 (9th Cir. 1999). The "hindsight rule" only requires that a Court consider evidence of subsequent events in conjunction with what appeared objectively reasonable to school administrators at the time an IEP was developed. Id.; see also E.M. ex rel. E.M. v. Pajaro Valley Unified School Dist. Office of Administrative Hearings, 652 F.3d 999, 1004 (9th Cir. 2011) ("after-acquired evidence may shed light on the objective reasonableness of a school district's actions at the time the school district rendered its decision."). Consequently, the Court finds that if plaintiff can demonstrate that she failed to make meaningful progress while following the program set out in her IEPs, this provides evidence that the IEPs were substantively unreasonable.

Turning to the evidence of plaintiff's progress, however, the Court disagrees with plaintiff's claim that she only made de minimis progress while at Jasper Elementary. With respect to plaintiff's second and third grade years, the decision below points out various important advancements made by plaintiff. For example, plaintiff was unable to write a paragraph on her own in January 2010, but she was able to do so by the time of her September 2010 IEP meeting. OAHD, Factual Findings ¶ 79. The decision also noted that, according to plaintiff's third grade teacher, she was meeting many of the third grade standards and was making progress in fluency and reading comprehension. OAHD, Factual Findings ¶ 130. Additionally, Rybarczyk testified that plaintiff was making substantial progress in reading decoding, and that she was on track to meet her third grade IEP goals. OAHD, Factual Findings ¶ 134.

Plaintiff does not explain why this only amounts to de minimis progress. Plaintiff does point to the Lindamood-Bell testing in January 2011 that concluded that plaintiff had not made any progress since the summer of 2010, but the decision below reasonably did not credit this evaluation because the individual who administered the tests did not testify and could not be identified. OAHD, Legal Conclusions ¶ 92, Factual Findings ¶

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-403 CAS (AGRx) | Date | January 29, 2013 |
|---|---|---|---|
| Title | K.K., ET AL. V. ALTA LOMA SCHOOL DISTRICT, ET AL. | | |

59.[5] Additionally, plaintiff's mother testified to her belief that plaintiff would never catch up to her peers if she were only provided with the services offered in plaintiff's IEP. This concern, even if true, does not show that plaintiff was only making de minimis progress, because under the "meaningful benefit" standard, schools are not required to provide special education services that allow disabled students to perform at the same level as the rest of the class. See, e.g., Deal v. Hamilton County Bd. of Educ., 392 F.3d 840, 862 (9th Cir. 2004) ("A school district clearly is not required to 'maximize each child's potential commensurate with the opportunity provided other children.'") (quoting Rowley, 485 U.S. at 198).

The Court also finds that plaintiff made meaningful progress in fourth grade. As plaintiff points out, it is true that the evidence suggests that plaintiff's score on the KTEA test decreased from 2009 to 2011. Since the decrease was slight, however, and it appears that the KTEA is normed to a student's age, at best this evidence shows that plaintiff is progressing more slowly than her peers. See AR at 425 – 427, 431 (test normed to student's age). It does not demonstrate the lack of any progress. Additionally, other evidence submitted by plaintiff supports the contrary conclusion that she was making progress in fourth grade. Plaintiff's fourth grade report cards show that her teacher believes she is "making slow, yet steady, progress towards grade level standards in math and reading." SE 2595. Her IEP also notes that she is able to write a multiple paragraph composition, and that she can grasp grade level math concepts. SE 2575.

In conclusion, the Court finds that the September 2010 and February 2011 IEPs were reasonably calculated to confer a meaningful educational benefit on plaintiff, and therefore affirms the finding of the decision below that the IEPs were substantively reasonable.

**B.   Whether ALSD was Required to Conduct a More Detailed Initial Evaluation**

Plaintiff argues that ALSD did not conduct an appropriate initial evaluation of her special education needs. In particular, plaintiff points out that her listening

---

[5] The decision below also notes testimony from ALSD witnesses stating that the tests offered by Lindamood-Bell were outdated. OAHD, Factual Findings ¶ 64.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-403 CAS (AGRx) | Date | January 29, 2013 |
|---|---|---|---|
| Title | K.K., ET AL. V. ALTA LOMA SCHOOL DISTRICT, ET AL. | | |

comprehension test score was substantially higher than her scores on other diagnostic tests, and argues that ALSD should have conducted additional tests to determine the reason for this discrepancy. Plaintiff argues that because ALSD did not conduct these additional follow up tests, it failed to determine plaintiff's unique areas of need using adequate assessment tools, in violation of 20 U.S.C. § 1414(b)(3)(B) and (C), and 34 C.F.R. § 300.304(c).

The decision below found that it was reasonable for ALSD not to conduct additional tests despite plaintiff's high listening comprehension score. OAHD, Legal Conclusions ¶ 21. Relying on Edmon's testimony, the decision below found that ALSD reasonably interpreted the high test score to mean that listening comprehension was a unique area of strength for plaintiff, a conclusion that did not warrant further testing. The decision below further explained that this interpretation of the test was justified because all other tests administered to plaintiff as part of her initial evaluation were consistent with one another.

20 U.S.C. § 1414(b) sets out the procedures school districts must follow when evaluating a student's eligibility for special education. Under § 1414(b)(3)(B) and (C), school districts are required assess students "in all areas of suspected disability," and must use "assessment tools and strategies that provide relevant information that directly assists persons in determining the educational needs of the child are provided." The Court finds that neither of these requirements were violated because, as the decision below sets out, ALSD reasonably interpreted plaintiff's high listening comprehension test score to show nothing more than a strength in this area. Consequently, this test score did not provide grounds for suspecting any additional disability, and the failure to conduct additional tests did not demonstrate that ALSD ignored relevant sources of information. The Court agrees with the decision below that the initial evaluations were appropriate, and did not deny plaintiff a FAPE.

### C. Whether ALSD Violated the IDEA During the Process of Developing Plaintiff's IEPs

Plaintiff argues that ALSD did not satisfy various procedural requirements of the IDEA in the course of developing plaintiff's IEPs. Plaintiff's arguments essentially contend that ALSD exhibited bad faith during the development of plaintiff's IEPs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-403 CAS (AGRx) | Date | January 29, 2013 |
|---|---|---|---|
| Title | K.K., ET AL. V. ALTA LOMA SCHOOL DISTRICT, ET AL. | | |

Specifically, plaintiff argues that ALSD failed to honestly consider plaintiff's evaluations, failed to honestly consider plaintiff's parents' concerns, and predetermined its offer of special education services prior to IEP meetings. Additionally, plaintiff argues that because her IEPs stated that she could receive "any other time as needed" in the resource room, her IEP was unreasonably vague and impermissibly gave ALSD teachers discretion to determine the duration of plaintiff's special education services outside of the IEP process.

     The decision below found that ALSD did not predetermine its offer of special education services, and that it gave good faith consideration to the independent evaluations and plaintiff's parents' concerns. First, the decision below pointed out that ALSD adjourned the August 2010 IEP meeting and scheduled a followup meeting in September 2010 in order to give their staff time to review plaintiff's independent assessments. Moreover, the decision below found that the testimony of the ALSD witnesses showed that they sincerely considered the independent evaluations. Turning to plaintiff's parents' concerns, the decision below found that ALSD honestly listened to plaintiff's parents at IEP meetings, and proposed changes to the IEP based on their concerns. For example, in the February 2010 IEP meeting, ALSD staff members offered to increase the amount of time plaintiff spent in the resource room in response to plaintiff's parents concerns. Additionally, the decision below found no evidence of predetermination. The decision recognized that an ALSD staff member wrote a letter to plaintiff's parents prior to the September 2010 IEP meeting stating that ALSD was "not looking to make any changes" to plaintiff's special education services. The decision below also found, however, that the ALSD approved changes to plaintiff's services at the September 2010 meeting, and therefore inferred that ALSD's conclusions were not predetermined.

     Finally, the decision below found that the "any other time as needed" clause did not amount to a procedural violation of the IDEA because ALSD never gave plaintiff more than ten to twenty-five minutes of extra services pursuant to this clause. The decision below also noted that this "minor flexibility" was intended to do nothing more than allow plaintiff's teachers to tailor their offer of special education to plaintiff's needs on a particular day, and that no harm could have resulted from this clause because plaintiff is not arguing that she spent too much time receiving special education services, but instead is demanding more intensive special education services.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-403 CAS (AGRx) | Date | January 29, 2013 |
|---|---|---|---|
| Title | K.K., ET AL. V. ALTA LOMA SCHOOL DISTRICT, ET AL. | | |

The Court agrees with the decision below. First, plaintiff presents no evidence of unlawful predetermination. "A school district violates IDEA procedures if it independently develops an IEP, without meaningful parental participation, and then simply presents the IEP to the parent for ratification." Ms. S. ex rel. G. v. Vashon Island School Dist., 337 F.3d 1115, 1131 (9th Cir. 2003). No such thing took place here, which is demonstrated by the fact that ALSD changed its offer of special education services after the September 2010 and February 2011 IEP meetings.

Moreover, ALSD did not ignore the IEEs or plaintiff's parents' concerns. Parent participation is an important part of the IEP development process, and parents must be given an opportunity for "meaningful participation" in the development of their child's IEP. Vashon Island, 337 F.3d at 1131 – 1132; Cerra v. Pawling Cent. School Dist., 427 F.3d 186, 192 (2d. Cir. 2005). Moreover, a school district must consider the results of an independent assessment as part of the IEP process. 20 U.S.C. § 1414(d)(3)(A). Here, at least one of plaintiff's parents participated in each IEP meeting, and there is no evidence suggesting that ALSD staff ignored their concerns, treated plaintiff's parents dismissively, or took a "take it or leave it" approach with plaintiff's parents. Vashon Island, 337 F.3d at 1132. Similarly, ALSD reconvened an IEP meeting specifically to consider plaintiff's independent assessments, and the individuals who conducted or indirectly supervised the IEEs participated in an IEP meeting. Finally, the decision below found that the testimony of the ALSD witnesses demonstrated that they sincerely considered the IEEs. The evidence therefore shows that ALSD honestly considered plaintiff's IEEs and gave plaintiff's parents a meaningful opportunity to participate in the development of plaintiff's IEP.

The Court also finds that the "any other time as needed" clause did not lead to any procedural violations of the IDEA. Although plaintiff complains that this clause prevented plaintiff's parents from participating in the IEP process and gave ALSD too much discretion in setting the duration of services, these concerns are unfounded. The presence of this clause did not prevent plaintiff's parents from asking ALSD to increase the minimum amount of time plaintiff was required to spend in the resource room, and did not give ALSD teachers discretion to cease special education services or only provide a nominal amount of service. Moreover, plaintiff's complaints about this clause appear tangential because the dispute between ALSD and plaintiff concerns the quality and type

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-403 CAS (AGRx) | Date | January 29, 2013 |
|---|---|---|---|
| Title | K.K., ET AL. V. ALTA LOMA SCHOOL DISTRICT, ET AL. | | |

of special education services plaintiff was to receive, and not the length of time she received services.[6]

### D. Whether ALSD Failed to Implement Services in Plaintiff's IEP

Although most of plaintiff's arguments challenge the substantive or procedural sufficiency of her IEPs, plaintiff also argues that ALSD failed to implement the IEP that was actually offered. In particular, plaintiff argues that the frequency and duration of services offered to plaintiff varied from the services set out in her IEP. Plaintiff points to resource room logs showing that plaintiff actually received between ten and ninety minutes of instruction per day in the resource room, not the thirty minutes per day specified in her IEP.

The decision below found that there was some variation in the amounts of time plaintiff spent in the resource room each day. The decision noted, however, that only a material failure to implement the services described in an IEP amounts to a denial of FAPE. Van Duyn, et al. v. Baker School District 5J, 502 F.3d 811, 815 (9th Cir. 2007). Turning to the evidence, the decision found that no material failure to implement the services took place because, at most, plaintiff's time in the resource room only fell below the minimum amount of time specified in plaintiff's IEP on three or four days.

---

[6] Plaintiff also argues that her parents were unable to effectively participate in the IEP process because defendants did not timely produce plaintiff's educational records after a request pursuant to the California Education Code. Cal. Educ. Code § 56504. The decision below did find that ALSD failed to timely produce plaintiff's educational records, but only with respect to records involving occupational therapy, adapted physical education, and assistive technology, which are outside the scope of the instant action. OAHD, Legal Conclusions ¶¶ 54 – 56. Plaintiff does not contend that there was a failure to produce educational records material to the issues relevant to this appeal, so the Court cannot conclude that plaintiff suffered any prejudice due to the failure to produce records. Plaintiff also asserts that the decision failed to craft a remedy for ALSD's failure to timely produce educational records. Compl. ¶¶ 76 – 80. This is inaccurate. OAHD, Legal Conclusions ¶ 104 (ordering ALSD to conduct IEEs in the areas of adapted physical education, occupational therapy, and assistive technology).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-403 CAS (AGRx) | Date | January 29, 2013 |
|---|---|---|---|
| Title | K.K., ET AL. V. ALTA LOMA SCHOOL DISTRICT, ET AL. | | |

The Court finds that plaintiff has not demonstrated that ALSD materially failed to implement plaintiff's IEPs, for the reasons provided in the decision below. "There is no statutory requirement of perfect adherence to the IEP," <u>Van Duyn</u>, 502 F.3d at 821, and small variations in the amounts of time plaintiff spent receiving instruction do not rise to the level of a material failure to implement services.

**V.    CONCLUSION**

In accordance with the foregoing, the Court hereby affirms the decision below, and finds in defendants' favor on all issues brought on appeal.[7]

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | | CMJ |

---

[7] Because the Court has found in defendants' favor on plaintiff's claims under the IDEA, defendants' motion for summary judgment is denied as moot.